PER CURIAM.
 

 Juan Carlos Chavez appeals the denial of his motion to vacate a judgment of conviction of first-degree murder and sentence of death under Florida Rule of Criminal Procedure 8.851. He also petitions this Court for a writ of habeas corpus. Pursuant to our mandatory jurisdiction to review final orders arising from capital proceedings, we affirm the circuit court’s order and deny the habeas petition.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const.
 

 PROCEEDINGS TO DATE
 

 In 1998, Chavez was convicted of the first-degree murder, kidnapping, and sexual battery of Samuel James (“Jimmy”) Ryce. Chavez confessed that on the afternoon of September 11, 1995, he abducted Jimmy at gunpoint from a school bus stop in the Redlands, a rural area of South Miami-Dade County, and proceeded to sexually assault Jimmy before fatally shooting the nine-year-old boy.
 
 See Chavez v. State,
 
 882 So.2d 730, 738 (Fla.2002).
 
 [1]
 
 He was arrested in December of 1995, after his employer found Jimmy’s book bag and textbooks inside a trailer occupied by Chavez.
 
 See id.
 
 at 737.
 

 A team from the Miami-Dade Public Defender’s Office represented Chavez during his capital trial, which was held in Orange County from August through September 1998. The jury entered a guilty verdict on each of the charged offenses.
 
 See id.
 
 at 747. Following the penalty phase of the trial, the jury recommended death by a unanimous vote.
 
 See id.
 
 In accord with this recommendation, the trial court imposed a death sentence for the murder and consecutive terms of life imprisonment with three-year mandatory minimum sentences for the kidnapping and sexual battery convictions.
 
 See id.
 

 [2]
 

 Chavez sought review in this Court, which affirmed his convictions and sentences.
 
 See id.
 

 [3]
 

 
 *204
 
 In 2004, Chavez filed a motion to vacate his convictions and sentences pursuant to Florida Rule of Criminal Procedure 3.851. The circuit court issued an order that summarily denied all but eleven claims, for which it granted an evidentiary hearing. However, during the evidentiary hearing, counsel abandoned or waived several claims.
 
 [4]
 
 Accordingly, the postconviction court considered evidence with regard to the following claims: (1) Chavez’s confession and the evidence presented during his trial were inconsistent; (2) Chavez was not involved in the defense; (3) counsel advised Chavez to testify falsely concerning his watch; (4) counsel failed to locate a witness who owned and lived in the place where the murder occurred and who would have testified that he was the owner of the items recovered from that location; (5) counsel failed to consult with Chavez with regard to preparation for the penalty phase; (6) counsel failed to provide the best defense possible because of interference from the Miami-Dade Public Defender based on concern about the political consequences of the defense; (7) counsel failed to investigate and call witnesses to present evidence that Chavez involuntarily waived his rights pursuant to
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (9) counsel failed to present a witness who could have provided testimony with regard to mental health mitigation. After a full hearing, the postconviction court entered an order that denied the remaining claims.
 

 In his appeal of this denial, Chavez asserts that (1) the postconviction court erred in ruling that a lawyer who had studied the Cuban legal system was not qualified to offer opinion testimony concerning the Cuban and American criminal justice systems; (2) the postconviction court erred in determining that counsel was effective despite the failure to present evidence of mental health mitigation through the testimony of a psychologist; and (3) there was a per se denial of effective assistance of trial counsel because discord amongst the defense team rendered the adversarial process inherently unreliable. In his habeas petition, Chavez argues that (1) ineffective appellate representation occurred during the direct appeal for the failure to challenge the constitutionality of Florida’s lethal-injection protocol; (2) counsel failed to assert that Florida’s standard penalty-phase jury instructions unconstitutionally shift the burden of proof to the defendant; (3) counsel failed to challenge the penalty-phase jury instructions with regard to minimizing and denigrating the role of the jury; and (4) cumulative errors deprived him of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.
 

 ANALYSIS OF THE RULE 3.851 APPEAL
 

 Alienage Claim
 

 During the evidentiary hearing, Chavez sought to introduce the testimony of Mi
 
 *205
 
 chael Amezaga, a Florida attorney with an interest in the Cuban criminal justice system. The asserted purpose of this expert testimony was to demonstrate that Chavez involuntarily waived his
 
 Miranda
 
 rights because he misunderstood the nature of the rights afforded under the American legal system in contrast to those of the Cuban legal system. The postconviction court did not qualify the witness as an expert on the basis that he lacked the requisite level of knowledge concerning the comparative study of the Cuban and American criminal justice systems. Chavez was thus unable to present this evidence in support of his claim of ineffective representation for the failure to present testimony during the suppression hearing that Chavez’s alienage affected his ability to voluntarily waive his
 
 Miranda
 
 rights. Here, Chavez asserts that the postconviction court erred in this determination because the witness held the proper knowledge and expertise to testify on the subject of alienage.
 

 It is within the court’s discretion to determine the qualifications of a witness to express an expert opinion, and this determination will not be reversed absent a clear showing of error.
 
 See Brooks v. State,
 
 762 So.2d 879, 892 (Fla.2000).. Before an expert may render an opinion, the witness must satisfy a four-prong test of admissibility. Section 90.702, Florida Statutes (2007), provides:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
 

 This section requires the court to make two preliminary determinations: (1) whether the subject matter will assist the trier of fact in understanding the evidence or in determining a disputed fact, and (2) whether the witness is adequately qualified to express an opinion on the matter.
 
 See Huck v. State,
 
 881 So.2d 1137, 1149 (Fla. 5th DCA 2004). Once these threshold determinations are affirmatively satisfied, two more requirements must be satisfied for the admission of expert opinion testimony. The expert opinion must apply to evidence presented during the hearing, and the danger of unfair prejudice must not substantially outweigh the probative value of the opinion.
 
 See Glendening v. State,
 
 536 So.2d 212, 220 (Fla.1988).
 

 The present case involves only the second determination — -that is, whether the witness was qualified to express an opinion on the subject matter to be addressed. A witness may be qualified as an expert through specialized knowledge, training,
 
 or
 
 education, which is not limited to academic, scientific, or technical knowledge. An expert witness may acquire this specialized knowledge through an occupation or business or frequent interaction with the subject matter.
 
 See Weese v. Pinellas County,
 
 668 So.2d 221, 223 (Fla. 2d DCA 1996) (citing
 
 Harvey v. State,
 
 129 Fla. 289, 176 So. 439, 440 (1937) (witnesses were qualified as expert cattlemen and butchers based upon many years of experience in such business and occupation and knowledge acquired thereby)). However, general knowledge is insufficient. The witness must possess specialized knowledge concerning the discrete subject related to the expert opinion to be presented.
 
 See
 
 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 702.1, at 686-87 (2008 ed.).
 

 Mr. Amezaga’s qualifications and proffered testimony consisted of some research, two visits to Cuba, which involved
 
 *206
 
 research and discussions with Cuban lawyers, and one discussion with Chavez. Chavez suggests that the qualifications of his expert were similar to those of the witness found sufficient in
 
 Brooks v. State,
 
 762 So.2d 879 (Fla.2000). In addressing the matter as one of first impression, we held in
 
 Brooks
 
 that the trial court did not err in ruling that an experienced dealer of crack cocaine was qualified to testify as an expert with regard to the identity and approximate weight of a rocky substance contained in a sandwich bag.
 
 See id.
 
 at 891-94. In reaching this conclusion, we reviewed decisions from Florida and other jurisdictions that qualified police officers or experienced drug dealers and users as narcotics-identification experts.
 
 See, e.g., United States v. Dominguez,
 
 992 F.2d 678, 681 (7th Cir.1993);
 
 A.A. v. State,
 
 461 So.2d 165, 165-66 & n. 1 (Fla. 3d DCA 1984). Here, Chavez has not submitted decisions concerning whether a witness could be qualified as an expert with regard to legal systems or how that expertise, even if it existed, might translate into expertise on the subject here.
 

 Moreover, the cases considered in
 
 Brooks
 
 identified a consistent factor in witness qualification, which was the witness’s familiarity and experience with the narcotic acquired through
 
 frequent
 
 and
 
 prolonged
 
 exposure to the drug. For instance, the -witness in
 
 Brooks
 
 was an experienced crack-cocaine dealer because he had sold the drug
 
 almost every day for approximately two years.
 
 The witness had personally observed the bag containing the rocky substance that he was identifying, and he was afforded an opportunity to examine and inspect the substance. The witness was qualified as an expert because he had acquired experience through the longevity and frequency of his exposure to the pertinent and non-mainstream subject matter. Applying a similar analysis here, the court did not err in refusing to qualify Mr. Amezaga as an expert witness based on his proffered qualifications. Mr. Amezaga’s qualification as a lawyer did not qualify him to testify as an expert on suppression issues in American criminal law, much less on the Cuban criminal justice system or how the difference between the two may have affected Chavez.
 

 Although an expert may also be qualified through study or practical experience, rather than education or formal training, there must be sufficient development of specialized knowledge in the subject matter.
 
 See Allen v. State,
 
 365 So.2d 456, 458 (Fla. 1st DCA 1978) (holding that the trial court abused its discretion in determining that a witness was not qualified to testify as an expert because he did not hold a doctoral degree). The expert must have
 
 adequate experience
 
 with the subject matter.
 
 See Robinson v. State,
 
 818 So.2d 588, 589 (Fla. 5th DCA 2002). The qualifications proffered by Chavez do not demonstrate that Mr. Amezaga had sufficiently developed specialized knowledge of, or that he had adequate experience with, the comparative study of the Cuban and American legal systems and how the significant differences would affect a defendant’s waiver of rights under
 
 Miranda.
 

 In
 
 Jordan v. State,
 
 694 So.2d 708 (Fla. 1997), we held that the trial court abused its discretion in allowing a witness to testify with regard to matters beyond her area of expertise.
 
 See id.
 
 at 715 (citing
 
 Hall v. State,
 
 568 So.2d 882, 884 (Fla.1990)). The witness testified with regard to offender-profile evidence, which was an area she had not definitively focused on during her education in psychology and counseling. We stated that her educational degrees did not qualify her to testify about complicated profile evidence drawn from scientific literature. Furthermore, her experiences did
 
 *207
 
 not qualify her as an expert in offender-profile evidence because, at the time of her testimony, she was not working with, compiling, or studying profile evidence, and she based her opinion solely on research gathered in the library and from the literature that she had reviewed. We stated:
 

 There is no absolute prohibition against qualifying an expert based upon “his or her study of authoritative sources without any practical experience in the subject matter.”
 
 Ehrhardt,
 
 § 702.1, at 512 [ (1995 ed.) ] The problem in this case is that [the witness] did not demonstrate, in the record, a sufficient study of the scientific literature. Simply reading large amounts of scientific literature, all of which falls well outside a person’s area of educational expertise, cannot serve to create an expert out of a non-expert.
 

 Jordan, 694 So.2d at 716. Similarly, the foundation of Mr. Amezaga’s understanding of the Cuban legal system originated from reading that country’s statutes and constitution. There is no abuse of discretion in the court’s determination that the reading of large amounts of legal literature beyond Mr. Amezaga’s expertise, which was American criminal law, did not qualify him as an expert in the Cuban legal system. Based on the proffered testimony and qualifications presented, we conclude that the court did not abuse its discretion in determining that the witness lacked sufficient knowledge, training, or education to render an expert opinion with regard to the differences between Cuban and American law and the alleged impact of Chavez’s alienage on the voluntariness of his confession.
 

 Even if Mr. Amezaga was qualified to testify, the proffered testimony does not demonstrate a reasonable probability of altering the outcome of the suppression hearing. During his direct appeal, Chavez asserted that he could not have understood the
 
 Miranda
 
 warnings and his constitutional rights because his native country is ruled by a totalitarian dictatorship. We determined that alienage alone was not a basis to undermine an understanding of his rights.
 
 See Chavez,
 
 832 So.2d at 751 (“The record clearly reflects that Chavez’s intelligence, education, and alienage did not adversely affect his understanding of his rights during the police interrogation progress. Finding no support in the record, the argument that Chavez’s background caused him to misapprehend his rights in the American system fails.”). From the proffered testimony, which was submitted after the evidentiary hearing, Mr. Amezaga allegedly would have testified that the differences in the American and Cuban criminal justice systems
 

 may
 
 have affected Mr. Chavez’s understanding of the
 
 Miranda
 
 rights. Since Mr. Chavez did not have access to a court appointed attorney during his contacts with the Cuban Criminal Justice System, he
 
 may have very well
 
 expected to not have a court appointed lawyer at the time that he was questioned. Also, since Mr. Chavez did not have the right to remain silent when he was interrogated in Cuba, he likewise
 
 could have expected
 
 to not have this important right when he was interrogated by police.
 

 (Emphasis supplied.) This proffer does not present admissible evidence that alien-age affected the voluntariness of the
 
 Miranda
 
 waiver involved here. We have already determined on direct appeal that Chavez’s intelligence, education, and alien-age did not adversely affect his understanding of his rights during the police interrogation process. Under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prevail on an ineffective assistance claim, Chavez must demonstrate that the proffered evi
 
 *208
 
 dence had a reasonable probability of changing the outcome, which is a probability sufficient to undermine our confidence in the verdict.
 
 See
 
 466 U.S. at 694, 104 S.Ct. 2052. The proffered testimony does not satisfy that burden. Thus, even if Mr. Amezaga qualified as an expert witness, Chavez would not be able to satisfy the prejudice prong of
 
 Strickland
 
 based on this proffered testimony. Chavez entered a knowing, intelligent, and voluntary waiver. We affirm the postconviction court’s denial of this claim.
 

 Mental Health Mitigation
 

 Chavez next claims that he received ineffective assistance of counsel during the penalty phase because counsel failed to investigate and present evidence of mental health mitigation. Specifically, Chavez asserts ineffective assistance based on the failure to present the testimony of Dr. John Quintana, who was initially hired to investigate potential mitigation evidence but was not presented as a witness because trial counsel feared that his testimony would insult the jury and be detrimental on cross-examination.
 

 In applying
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have held that for claims of ineffective assistance to succeed, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). There is a strong presumption that trial counsel’s performance was effective, and judicial scrutiny of counsel’s performance must be highly deferential.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.
 
 See Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000). In conducting this review, we afford deference to the postcon-viction court’s findings of fact if they are supported by competent, substantial evidence, while we review the legal claims
 
 de novo. See Connor v. State,
 
 979 So.2d 852, 858 (Fla.2007).
 

 With regard to presentation of mitigation evidence, defense counsel must certainly consider all phases of a capital proceeding and strive to avoid a counterproductive course.
 
 See Florida v. Nixon,
 
 543 U.S. 175, 191-92, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). In
 
 Straight v. Wainwright,
 
 422 So.2d 827 (Fla.1982), the defendant challenged his trial counsel’s failure to further investigate mitigating evidence. There,' trial counsel testified
 
 *209
 
 that he did not present certain mitigation because, in his view, that evidence would have been fundamentally inconsistent with the entire defense.
 
 See id.
 
 This Court concluded that trial counsel’s performance was not ineffective where trial counsel reasonably viewed the mitigating evidence to be fundamentally damaging to the integrity of the defense.
 
 See id.
 

 Here, limitations were imposed on counsel due to Chavez’s refusal to provide certain facts with 1’egard to his background. Additionally, conflict with guilt-phase strategy presented obstacles. During the evidentiary hearing, counsel testified that he balanced the benefit of presenting Dr. Quintana’s testimony against the risk created by the defense theory of innocence. After conducting this balancing analysis, trial counsel did not present Dr. Quintana as a witness because (1) the psychological testing revealed that although Chavez did not completely reach the criteria for socio- or psychopathy, his score was heightened in that area; (2) Dr. Quintana asserted that it was unlikely Chavez acted alone, which could possibly reveal that Chavez had a homosexual lover and potential accomplice; (3) Dr. Quinta-na’s finding that Chavez was not a pedophile was in conflict with the jury’s determination that Chavez was guilty of sexual battery on a nine-year-old boy; and (4) Dr. Quintana did not conduct a follow-up evaluation of Chavez prior to trial.
 

 In Dr. Quintana’s initial evaluation of Chavez prior to trial, Chavez scored a 67 on the psychopathic deviant scale, which was dangerously close to the score (i.e., 70) which would classify Chavez as a psychopath or as having a psychopathic personality. During the evidentiary hearing, the State demonstrated that Chavez’s score might have increased if Chavez had answered one or more questions differently. Dr. Quintana also agreed that under a different testing rubric, Chavez might have received an elevated score to place him in a category of danger. With regard to the pedophilia results, counsel testified that a cross-examination inquiry during the penalty-phase proceedings would have likely addressed the inconsistency of the results in light of the jury’s determination that Chavez had committed sexual battery on a minor. Trial counsel stated: “Obviously if [Chavez] committed the crime then ... you would have to concede that he was a pedophile, which means that it would not validate [Dr. Quintana’s] psychological opinion.” This potential attack occurred during the postconviction evidentiary hearing, when Dr. Quintana was heavily impeached on cross-examination with the detailed confession of Chavez to the sexual battery. In response, Dr. Quintana admitted that either Chavez lied to the police concerning his pedophilia or he had been untruthful on the psychological test.
 

 Under these circumstances, counsel cannot be deemed ineffective for not presenting testimony that would have alienated the penalty-phase jury. This was a reasonable strategic decision based upon a belief that Dr. Quintana’s testimony would have inflicted more harm from impeachment than it would have assisted the penalty-phase presentation.
 
 See Asay v. State,
 
 769 So.2d 974, 985 (Fla.2000) (“[I]n those cases where counsel did conduct a reasonable investigation of mental health mitigation prior to trial and then made a strategic decision not to present this information, we have affirmed the trial court’s findings that counsel’s performance was not deficient.”). Even if the psychological evaluation of Chavez here did not result in a score above 70, the jury could have reasonably correlated the close proximity of the score to the level of establishing psychopathy.
 
 See Freeman v. State,
 
 858 So.2d 319, 327 (Fla.2003) (concluding that
 
 *210
 
 antisocial personality disorder is a trait that most jurors tend to view unfavorably).
 

 In addition, counsel was not deficient for failing to present mitigation testimony based on the client’s self-imposed limitations. Lead counsel testified that it was necessary to mislead Chavez to convince him to even confer with Dr. Quintana because Chavez did not want to present penalty-phase mitigation. At first, lead counsel informed Chavez that Dr. Quintana was only going to evaluate him as it related to the guilt phase. When the time to conduct a follow-up interview arrived, lead counsel testified that Chavez refused to participate. Even if this evidence could have been presented during a Spencer
 
 [5]
 
 hearing, Chavez refused to participate in the followup interview that Dr. Quintana requested. Thus, there was no avenue for counsel to acquire the necessary follow-up information to supplement Dr. Quintana’s report. Based on the record, the postconviction court correctly ruled that there was no deficient performance by counsel for the strategic decision that the testimony of Dr. Quintana not be presented.
 

 Further, Chavez did
 
 not
 
 demonstrate that the failure to present Dr. Quintana as a mitigation witness created circumstances which undermine our confidence in the proceeding here, given the substantial aggravation and the relatively insignificant and possibly detrimental impact of that testimony.
 
 Cf. Hitchcock v. State,
 
 991 So.2d 337, 358 (Fla.2008);
 
 Cherry v. State,
 
 781 So.2d 1040, 1048 (Fla.2000). The trial court here found three aggravating factors, one of which was that the capital felony was especially heinous, atrocious, or cruel. Though the trial court found several mitigating factors, including that the defendant lacked a prior history of violence, the court concluded that “the quality of the aggravating factors in this case greatly outweigh the mitigating circumstances. The strength of the aggravating circumstances in this case are so overwhelming that they make the
 
 mitigating circumstances appear insignificant by comparison.” Chavez,
 
 832 So.2d at 766 n. 44 (emphasis supplied). Furthermore, on direct appeal, this Court upheld Chavez’s sentence as proportional.
 
 See Chavez,
 
 832 So.2d at 766-67. Dr. Quintana’s testimony with regard to Chavez’s bookish, non-violent personality does not create a reasonable probability that, with his testimony, the outcome of the penalty phase would have been different.
 
 See Cherry,
 
 781 So.2d at 1048. Thus, we affirm the post-conviction court’s denial of this claim because the strategic decision to not present Dr. Quintana as a mitigation witness was based on Chavez’s wishes and a reasonable evaluation of the potentially negative impact of the testimony. Furthermore, the testimony presented by Chavez does not undermine our confidence in the outcome of the penalty phase given the substantial aggravation and the relatively insignificant and possibly detrimental impact of this testimony.
 

 Per Se Ineffective Assistance of Counsel
 

 Chavez asserts that trial counsel’s actions were ineffective per se under the standard articulated in
 
 United States v. Cronic,
 
 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Chavez places the majority of the alleged errors on the decisions made by lead counsel and advances that the failure of co-counsel to challenge lead counsel’s decisions demonstrated a per se denial of the effective assistance of counsel. Specifically, Chavez frames the conflict between the attorneys concerning the proper mitigation strategy as a conflict
 
 *211
 
 of interest that affected the adequacy of his representation.
 

 In denying the individual errors asserted below, the postconviction court noted that each claim failed to demonstrate deficient performance or prejudice and there was no evidence to establish a lack of harmony within the defense team. Further, it was determined that Chavez had not shown prejudice from the alleged interference of the Public Defender because lead counsel testified that all depositions were taken and all investigations were ultimately completed. The postconviction court found that Chavez had not presented any credible testimony that he was denied a full legal defense by his trial counsel or that the delay in investigation affected the outcome of the trial.
 

 The Sixth Amendment of the United States Constitution guarantees a defendant the right to be represented by counsel during criminal proceedings. This mandate has been extended to mean adequate legal assistance by a reasonably competent attorney whose advice falls within the range of competence demanded of attorneys in criminal cases.
 
 See Cuyler v. Sullivan,
 
 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980);
 
 McMann v. Richardson,
 
 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The right to competent counsel has been accorded because of the “effect it has on the ability of the accused to receive a fair trial.”
 
 Cronic,
 
 466 U.S. at 658, 104 S.Ct. 2039. As the United States Supreme Court explained:
 

 Thus, the adversarial process protected by the Sixth Amendment requires that the accused have “counsel acting in the role of an advocate.”
 
 Anders v. California,
 
 386 U.S. 738, 743, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution’s case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.
 

 Cronic,
 
 466 U.S. at 656-57, 104 S.Ct. 2039 (footnotes omitted).
 

 Generally, a defendant is entitled to relief if he or she demonstrates that counsel violated this guarantee through deficient performance
 
 and
 
 that he or she was prejudiced by the deficiency.
 
 See Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052. However, if the defendant can demonstrate that counsel “entirely fail[ed] to subject the prosecution’s case to meaningful adversarial testing,” the law will presume prejudice and deem counsel ineffective per se.
 
 Cronic,
 
 466 U.S. at 659, 104 S.Ct. 2039. For instance, constitutional error is found without a showing of prejudice when counsel was totally absent, was prevented from assisting the accused during a critical stage of the proceeding, or had a conflict of interest that affected the adequacy of representation.
 
 See id.
 
 at 659 n. 25, 104 S.Ct. 2039. Apart from these rare circumstances, the
 
 Cronic
 
 standard is a narrow exception to
 
 Strickland
 
 that is reserved for situations where counsel has entirely failed to function as the client’s advocate.
 
 See Florida v. Nixon,
 
 543 U.S. 175, 189-90, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (holding that this Court erred in determining that counsel’s concession of the client’s guilt qualified as such a failure).
 

 Here, the totality of the defense team’s efforts does not demonstrate a complete failure to subject the State’s case to a meaningful adversarial testing such that the denial of Sixth Amendment rights rendered the adversary process itself pre
 
 *212
 
 sumptively unreliable. Chavez’s specific allegation that lead counsel’s strategy created an absolute failure of the adversarial system does not qualify under the
 
 Cronic
 
 exception to
 
 Strickland.
 
 Despite Chavez’s earnest attempt to portray lead counsel as a one-man threat to the adversarial system, none of the cases advanced by Chavez support this interpretation of the per se rule because each decision is either distinguishable or inapplicable to these circumstances.
 
 See Mickens v. Taylor,
 
 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (discussing conflict of interest where counsel had previously represented the victim in the defendant’s case);
 
 Crist v. Fla. Ass’n of Crim. Defense Lawyers, Inc.,
 
 978 So.2d 134, 148 (Fla.2008) (holding that the mere creation of the Office of Criminal Conflict and Civil Regional Counsel did not implicate the Sixth Amendment right to effective representation);
 
 Hatten v. State,
 
 561 So.2d 562, 565 (Fla.1990) (holding that due to an excessive backlog of cases, the public defender failed to provide the defendant with effective representation);
 
 Gorham v. State,
 
 521 So.2d 1067 (Fla.1988) (addressing summary denial of postconviction claim without any mention
 
 of
 
 per se ineffectiveness);
 
 Makemson v. Martin County,
 
 491 So.2d 1109, 1111 (Fla.1986) (holding that an arbitrary fee cap unconstitutionally affected a defendant’s Sixth Amendment right by prohibiting the trial court from compensating counsel for the time necessary to provide the defendant with effective representation).
 

 The
 
 Cronic
 
 standard is reserved for situations where the assistance of counsel has been denied entirely or withheld during a critical stage of the proceeding such that the “likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.”
 
 Mickens,
 
 535 U.S. at 166, 122 S.Ct. 1237. This presumption functions
 
 to
 
 protect the right of an accused to a fair trial because the failure to receive such assistance jeopardizes the functioning of the adversarial system as a whole. Despite lead counsel’s assertion that the Miami-Dade Public Defender attempted to curtail the defense team’s investigation, the record contains sufficient evidence that any alleged internal constraints did not limit counsel’s ability to provide effective representation. Unlike the defendant in
 
 Cronic,
 
 Chavez was represented by a team of experienced capital defenders. This team aggressively tested the State’s case by conducting depositions, filing motions, conducting cross-examination, and presenting a defense. Thus, the representation was not ineffective for the alleged failure to subject the prosecution’s case to meaningful adversarial testing.
 

 Furthermore, the alleged conflict between counsel concerning the proper strategy to pursue during the penalty phase does not fall under the conflict-of-interest cases deemed to demonstrate per se ineffective assistance of counsel. Prejudice may be presumed when counsel labors under an actual conflict of interest, despite the fact that the constraints on counsel in that context are entirely self-imposed.
 
 See Cuyler,
 
 446 U.S. at 335, 100 S.Ct. 1708. Conflict of interest
 
 generally occurs when
 
 an attorney actively represents conflicting interests, not when a defense team considers conflicting strategic approaches.
 
 See, e.g., Mickens,
 
 535 U.S. at 166-172, 122 S.Ct. 1237 (examining cases that found presumptive ineffective assistance when the defendant’s attorney actively represented conflicting interests, which were
 
 Cuyler, Holloway v. Arkansas,
 
 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and
 
 Wood v. Georgia,
 
 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)). Thus, there is no merit to Chavez’s allegation that any alleged internal debate over strat
 
 *213
 
 egy rose to the magnitude of per se ineffective assistance.
 

 Chavez cannot rely on the per se rule from
 
 Cronic
 
 to avoid establishing prejudice for each of the claims denied by the postconviction court. This case is not one in which the surrounding circumstances make it unlikely that Chavez received effective assistance of counsel. Therefore, we deny this claim because counsel’s actions do not qualify as per se ineffectiveness under the narrow
 
 Cronic
 
 exception to
 
 Strickland.
 

 ANALYSIS OF THE PETITION FOR WRIT OF HABEAS CORPUS
 

 In his habeas petition, Chavez asserts that counsel rendered ineffective assistance during his direct appeal by failing to challenge the constitutionality of Florida’s lethal-injection protocol and Florida’s standard penalty-phase jury instructions. Chavez further alleges that appellate counsel’s repeated instances of deficient performance deprived him of the meaningful legal assistance guaranteed by the Sixth Amendment. We reject each of these claims.
 

 The Constitutionality of Lethal Injection as Administered in Florida
 

 During January of 2000, the Legislature adopted legislation which created lethal injection as a mode of execution in Florida. On direct appeal, Chavez’s amended initial brief was filed with this Court during April of 2000, approximately three months after these legislative changes. Chavez asserts that appellate counsel rendered ineffective assistance by failing to challenge Florida’s lethal-injection protocol as an unconstitutional mode of execution. Chavez also requests that we reexamine our holdings in
 
 Lightbourne v. McCollum,
 
 969 So.2d 326 (Fla.2007),
 
 cert. denied,
 
 — U.S.-, 128 S.Ct. 2485, 171 L.Ed.2d 777 (2008), and related decisions, in light of the United States Supreme Court’s decision in
 
 Baze v. Rees,
 
 — U.S. -, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).
 

 Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus.
 
 See Freeman v. State,
 
 761 So.2d 1055, 1069 (Fla.2000). The defendant has the burden of affirmatively establishing each prong of the
 
 Strickland
 
 standard.
 
 See Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052. In addition, capital defendants may not use claims of ineffective assistance of appellate counsel to camouflage issues that should have been presented on direct appeal or in a postconviction motion.
 
 See Rutherford v. Moore,
 
 774 So.2d 637, 643 (Fla.2000). Moreover, appellate counsel cannot be ineffective for failing to raise a meritless issue.
 
 See Lawrence v. State,
 
 831 So.2d 121, 135 (Fla.2002);
 
 see also Kokal v. Dugger,
 
 718 So.2d 138, 142 (Fla. 1998) (“Appellate counsel cannot be faulted for failing to raise a nonmeritorious claim.”).
 

 At the time of the direct appeal in this case, there was simply no basis upon which to present a mode-of-execution challenge to Florida’s original lethal-injection protocol. The protocol was new, unimplemented, and widely regarded as a humane, civilized alternative to death by electrocution.
 
 Cf. Baze,
 
 128 S.Ct. at 1525-26, 128 S.Ct. 1520 (“States [that impose the death penalty have] altered [their] method[s] of execution over time to more humane means of carrying out the[se] sentence[s]. That progress has led to the use of lethal injection by every jurisdiction that imposes the death penalty.”).
 

 To the extent that Chavez disputes the constitutionality of Florida’s current lethal-injection protocol, we have repeatedly rejected such Eighth Amendment chai-
 
 *214
 
 lenges.
 
 See Tompkins v. State,
 
 994 So.2d 1072, 1081 (Fla.2008),
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 1305, — L.Ed.2d -(2009);
 
 Power v. State,
 
 992 So.2d 218, 220-21 (Fla.2008);
 
 Sexton v. State,
 
 997 So.2d 1073, 1089 (Fla.2008);
 
 Schwab v. State,
 
 995 So.2d 922, 933 (Fla.2008),
 
 petition for cert. filed,
 
 No. 08-5020 (U.S. June 30, 2008);
 
 Woodel v. State,
 
 985 So.2d 524, 533-34 (Fla.),
 
 cert. denied,
 
 — U.S.-, 129 S.Ct. 607, 172 L.Ed.2d 465 (2008);
 
 Lebron v. State,
 
 982 So.2d 649, 666 (Fla. 2008);
 
 Schwab v. State,
 
 982 So.2d 1158, 1159-60 (Fla.2008);
 
 Lightbourne v. McCollum,
 
 969 So.2d 326, 350-53 (Fla.2007). Finally, with regard to reliance upon
 
 Baze,
 
 this Court recently reaffirmed that “Florida’s current lethal-injection protocol passes muster under
 
 any
 
 of the risk-based standards considered by the
 
 Baze
 
 Court.”
 
 Ventura v. State,
 
 2 So.3d 194, 200 (Fla. 2009),
 
 petition for cert. filed,
 
 No. 08-10098 (U.S. Apr. 16, 2009). Thus, we deny this habeas claim.
 

 Constitutionality of Penalty-Phase Jury Instructions
 

 This Court has repeatedly rejected claims that the standard jury instructions impermissibly shift the burden to the defense to prove that death is not the appropriate sentence or that these instructions unconstitutionally denigrate the role of the jury in violation of
 
 Caldwell v. Mississippi,
 
 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
 
 See, e.g., Taylor v. State,
 
 937 So.2d 590, 599 (Fla.2006) (citing
 
 Elledge v. State,
 
 911 So.2d 57, 79 (Fla.2005);
 
 Mansfield v. State,
 
 911 So.2d 1160, 1180 (Fla. 2005);
 
 Sweet v. Moore,
 
 822 So.2d 1269, 1274 (Fla.2002));
 
 Carroll v. State,
 
 815 So.2d 601, 622-23 (Fla.2002);
 
 Rutherford v. Moore,
 
 774 So.2d 637, 644 & n. 8 (Fla. 2000);
 
 Downs v. State,
 
 740 So.2d 506, 517 n. 5 (Fla.1999);
 
 San Martin v. State,
 
 705 So.2d 1337, 1350 (Fla.1997);
 
 Shellito v. State,
 
 701 So.2d 837, 842 (Fla.1997);
 
 Sochor v. State,
 
 619 So.2d 285, 291 (Fla.1993);
 
 Turner v. Dugger,
 
 614 So.2d 1075, 1079 (Fla.1992);
 
 Combs v. State,
 
 525 So.2d 853, 855-58 (Fla.1988). Appellate counsel cannot be ineffective for failing to raise a meritless issue.
 
 See, e.g., Lawrence,
 
 831 So.2d at 135. Accordingly, we deny these habeas claims.
 

 Cumulative Error
 

 Chavez asserts that appellate counsel’s repeated instances of deficient performance during his direct appeal deprived him of the meaningful legal assistance guaranteed by the Sixth Amendment. This Court has held that “where individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.”
 
 Griffin v. State,
 
 866 So.2d 1, 22 (Fla.2003);
 
 see also Dufour v. State,
 
 905 So.2d 42, 65 (Fla. 2005). Each of the claims raised by Chavez is without merit. Therefore, we deny Chavez’s habeas petition.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the postconviction court’s order denying Chavez’s amended rule 3.851 motion, and we deny his petition for writ of habeas corpus.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and LABARGA, JJ., concur.
 

 PERRY, J., did not participate.
 

 [1]
 

 . Further factual details can be found in this Court's decision on direct appeal.
 
 See Chavez v. State,
 
 832 So.2d 730 (Fla.2002).
 

 [2]
 

 . In determining that the death sentence was appropriate, the trial court found the following aggravating circumstances: (1) that the murder was committed while Chavez was engaged in the commission of, or in an attempt to commit or escape after committing, the crime of kidnapping; (2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest; and (3) that the murder was especially heinous, atrocious, or cruel ("HAC").
 
 See Chavez,
 
 832 So.2d at 767 n. 44. In addition, the trial court found the following statutory mitigating circumstances: (1)his family background and good family relationship (some weight); (2) his political and economic background (little weight); (3) his good employment and ability to work and earn a living (some weight); and (4) his ability to establish and maintain positive relationships (some weight).
 
 See id.
 
 The trial court also found the following additional mitigating circumstances: (1) his good jail conduct and courtroom demeanor (very little weight); and (2) his lack of a prior history of violence (some weight).
 
 See id.
 

 [3]
 

 .Chavez raised the following issues during his direct appeal: (1) the police lacked probable cause to arrest him; (2) his confession should have been suppressed as involuntary for several reasons, including his alienage; (3) photographing of jurors' faces by the media denied him a fair trial; (4) the trial court erred in admitting a bloodstained mattress unrelated to the case; (5) the trial court erred in denying his motion for judgment of acquittal on the capital sexual battery charge because the State failed to prove the corpus delicti of the crime; (6) the trial court erred in admitting cumulative photographs of the victim's body; (7) the trial court erred in giving certain jury instructions; (8) the State improperly diminished the role of the jury during voir dire and the penalty phase; (9)
 
 *204
 
 several related claims that challenged the constitutionality of Florida's capital sentencing scheme; (10) the death
 
 sentence
 
 was disproportionate; and (11) Florida’s capital sentencing scheme violated
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
 
 See Chavez,
 
 832 So.2d at 747-48, 758, 760, 762-64, 766-67 n. 45.
 

 [4]
 

 . Counsel waived the following claims: (1) the prosecuting attorney was not a member of the State Attorney's Office during the trial; (2) trial counsel failed to obtain the fingerprints of an individual for comparison to a print found on a firearm retrieved from Chavez's trailer; and (3) counsel failed to introduce a foreign police report that established the period Chavez spent in a Cuban jail.
 

 [5]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).