COHEN, J.
Victor Manuel Amaro appeals the denial of his amended Florida Rule of Criminal Procedure 3.850 motion for postconviction relief, which alleged six grounds of ineffective assistance of trial counsel. The postconviction court summarily denied grounds II, V, and VI and denied grounds I, III, and IV following an evidentiary hearing.[1] We affirm.
The underlying facts of this case involved a shootout that occurred at a VFW[2] lodge between two rival motorcycle gangs, the Florida Warlocks and the Philadelphia ("Philly") Warlocks. A jury found Amaro guilty of two counts of second-degree murder and acquitted him of a third count of second-degree murder and two counts of attempted first-degree murder. This Court affirmed Amaro's conviction. See Amaro v. State, 179 So.3d 335 (Fla. 5th DCA 2015) (per curiam).
On appeal of the denial of his amended motion for postconviction relief, Amaro argues that the postconviction court erred in summarily denying grounds II, V, and VI when the State conceded that he was entitled to an evidentiary hearing on all claims. This argument is meritless because a court is not bound by such concessions. See Fla. R. Crim. P. 3.850(f)(4) ; see also Lebron v. State, 100 So.3d 132, 133 (Fla. 5th DCA 2012) ("If a ground's allegations are facially sufficient (pled in sufficient detail), the trial court must grant an evidentiary hearing unless the allegations are legally invalid (legally insufficient on their face) or records in the court's file conclusively show that the defendant is entitled to no relief." (emphasis added) (citations omitted)). We find that the postconviction court's analysis in its order and attachments thereto support the summary denial of grounds II, V, and VI.[3] We also affirm the denial of ground IV without further discussion.
We write to address grounds I and III of Amaro's motion, which the court denied after an evidentiary hearing.
In ground I, Amaro alleged that his trial counsel was ineffective for failing to file a pretrial motion in limine requesting a Daubert [4] hearing to either exclude or limit the State's introduction of expert testimony *855 on tool-mark identification.[5] Amaro presented no expert testimony during his postconviction hearing. On appeal, he fails to cite to any authority in support of his position-that such expert testimony should be excluded or limited based on its unreliability or relevance pursuant to Daubert. Rather, he relies on a series of articles based on a Google search that challenge the reliability and conclusiveness of ballistics evidence. However, Amaro did not present these articles below, and the articles are not part of the record on appeal. Thus, Amaro's inclusion of this search in his brief was improper. E.g., State v. Town of Sweetwater, 112 So.2d 852, 854 (Fla. 1959) (finding argument presented without citation or legal authority failed to meet burden of demonstrating error).
Forensic firearm and tool-mark identification evidence is not a new or novel methodology, and its admissibility in criminal cases is well-documented in Florida's jurisprudence.[6] See King v. State, 89 So.3d 209, 228 (Fla. 2012) ("Decisional law demonstrates that tool-mark identification in the context of ballistics has been used in the criminal context since at least 1929, and in Florida since at least 1937." (citations omitted)). Because of the widespread acceptance of ballistics evidence, courts have admitted expert testimony regarding such evidence under both the Daubert and Frye [7] standards. See United States v. Hicks, 389 F.3d 514, 526 (5th Cir. 2004) (finding expert firearm comparison testing methodology reliable under Daubert standard and thus, admissible); Foster v. State, 132 So.3d 40, 69 (Fla. 2013) (holding that because tool-mark examination in ballistics was not new or novel methodology, trial counsel was not deficient in failing to demand Frye hearing before admission of expert's testimony); King, 89 So.3d at 229 (finding that trial court did not err in declining to conduct Frye hearing based on "well-documented history of tool-mark identification over the last century"). Thus, we agree with the postconviction court that Amaro failed to establish deficient performance and prejudice as required by Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), based on his trial counsel's failure to move to exclude the tool-mark evidence under Daubert. See also Foster, 132 So.3d at 69.
In ground III, Amaro alleged ineffective assistance based on his trial counsel's failure to request a cautionary instruction regarding unasked juror questions and to object to the trial court's noncompliance with Florida Rule of Criminal Procedure 3.371. Although we conclude that Amaro waived this claim for appellate review by failing to cite to the record or transcript to identify the questions at issue, we address the merits of the claim for the benefit of future litigants.[8]
*856 During Amaro's trial, the court permitted the jury to submit written questions to be asked of witnesses. Rule 3.371 governs the procedure for juror questioning of witnesses during a criminal trial and provides:
(a) Judicial Discretion. At the discretion of the presiding trial judge, jurors may be allowed to submit questions of witnesses during the trial.
(b) Procedure. The trial judge shall utilize the following procedure if a juror indicates that the juror wishes to ask a question:
(1) the questions must be submitted in writing;
(2) the trial judge shall review the question outside the presence of the jury;
(3) counsel shall have an opportunity to object to the question outside the presence of the jury;
(4) counsel shall be allowed to ask follow up questions; and
(5) the jury must be advised that if a question submitted by a juror is not allowed for any reason, the juror must not discuss it with the other jurors and must not hold it against either party.
Fla. R. Crim. P. 3.371. The record reflects that the trial court failed to comply with subsection (b)(5).[9]
In denying this claim, the postconviction court partially reasoned that trial counsel's failure to request such an instruction or to object to the court's failure to comply with the rule constituted reasonable trial strategy. We reject this reasoning. Amaro's trial counsel admitted at the postconviction hearing that he was unfamiliar with the rule. Decisions based upon either a lack of knowledge or misunderstanding of the law cannot constitute reasonable trial strategy. Butler v. State, 84 So.3d 419, 421 (Fla. 5th DCA 2012) ("It is well established, in a number of contexts, that 'a tactical or strategic decision is unreasonable if it is based on a failure to understand the law.' " (quoting Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003) )).
However, the postconviction court correctly determined that Amaro failed to establish prejudice from the trial court's failure to give a cautionary instruction as to unasked juror questions. In his postconviction motion, Amaro asked the court to "presume prejudice," stating:
[Amaro] has no way of proving now that that [sic] any one juror discussed an unasked question of theirs with another juror, or that any juror whose question went unasked may have felt embarrassed or antagonized by the rejection or otherwise ascribed any improper implication as the reason for the trial court's not presenting the question to a particular witness, which resulted in that jurors [sic] harboring a bias against the defense.
....
Thus, in light of the trial court's failure to employ the protective procedure and the failure of Mr. Amaro's trial counsel to object to that deprivation, Mr. Amaro moves this Court to presume prejudice such as that described by the United States Supreme Court in Estes v. Texas, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).
*857 The law will presume prejudice and deem counsel per se ineffective in rare circumstances. E.g., Chavez v. State, 12 So.3d 199, 211 (Fla. 2009) (presuming prejudice where defendant demonstrates that counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," i.e., "when counsel was totally absent, was prevented from assisting the accused during a critical stage of the proceeding, or had a conflict of interest that affected the adequacy of representation" (quotations and citations omitted)). Counsels' deficiencies in such cases generally go to the very essence of a defendant's constitutional right to competent counsel or the right to receive a fair trial. Id.
While counsel should have requested the trial court to instruct the jury as to unasked juror questions, we are unwilling to presume prejudice and deem counsel ineffective per se. To decide otherwise would effectively find that the failure to instruct the jury pursuant to Rule 3.371(b)(5) constitutes per se reversible error.[10] Thus, as to ground III, we find that the court did not err in concluding that Amaro failed to meet his burden of establishing prejudice under Strickland.
AFFIRMED.
BERGER and WALLIS, JJ., concur.

The Honorable Jessica J. Recksiedler presided over the trial, and the Honorable Debra S. Nelson presided over the postconviction proceedings.

The Veterans of Foreign Wars of the US.

Further, in his initial brief, Amaro addressed his substantive basis for relief as to grounds II and V but not ground VI. Thus, we deem ground VI waived. E.g., Coolen v. State, 696 So.2d 738, 742 n.2 (Fla. 1997) (noting that failure to fully brief and present argument in support of points on appeal "constitutes a waiver of these claims").

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At the time of trial, Daubert had been the new evidentiary standard for approximately ten months. See § 90.702, Fla. Stat. (2014) (incorporating Daubert standard into Florida Rules of Evidence), amended by ch. 2013-107, § 1, Laws of Fla., eff. July 1, 2013, invalidated by DeLisle v. Crane Co., 258 So.3d 1219, 1229 (Fla. 2018).

The State's firearm expert rendered testimony that conclusively linked the bullet recovered from one victim to Amaro's gun. The expert further testified that a comparison of the bullet recovered from a second victim demonstrated a "positive inconclusive" link to another of Amaro's guns, meaning that the bullet was likely fired from his weapon.

We acknowledge that the certainty of such tool-mark examinations is an issue in criminal cases.

Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

With a trial transcript of over 1300 pages, failure to identify the questions at issue renders the claim waived for appellate review. E.g., Barwick v. State, 88 So.3d 85, 101 (Fla. 2011) (holding that defendant waived appellate review of his postconviction claim that trial counsel was ineffective for failure to object to certain comments by the State where defendant failed to direct court's attention to comments at issue).

We note that Amaro misrepresents the rule throughout his brief. He references the number of questions asked by the jurors, placing that number at over 100. It is undisputed that the trial court properly administered the first four requirements of Rule 3.371. Amaro's claim relates only to counsel's failure to request an instruction as to unasked questions pursuant to subsection (b)(5).

If trial judges allow jurors to ask questions, we encourage compliance with all the procedures of Rule 3.371, as Judge Alterbernd did in dicta in Richards v. State, 39 So.3d 431, 434 (Fla. 2d DCA 2010).