FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-1405
_____

PHILIP JUDE MORAN,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Bay County.
Brantley Scott Clark, Judge.

April 10, 2024

ROWE, J.

Philip Jude Moran appeals an order summarily denying his motion for postconviction relief brought under Florida Rule of Criminal Procedure 3.850. Moran raised five claims of ineffective assistance of counsel and one claim of cumulative error. Finding no error by the trial court, we affirm.

*Facts*

The State charged Moran with the second-degree murder of his wife. At trial, the State presented evidence showing that Moran's wife was shot in her bedroom, dragged through the home, and left on the back porch propped up in a sitting position. Witnesses testified that when the shooting occurred, Moran made

statements to friends and family members that prompted them to ask the police to conduct a welfare check.

The police officers who conducted the welfare check testified that when they arrived at the Moran home, they heard Moran talking and moving around the home. The officers also found physical evidence of the murder, including blood-stained towels and tissues showing that Moran tried to remove the blood trail on the floor he made by dragging his wife's body through the house. Moran also tried to obscure the blood trail by covering it with debris. Investigators later tested a pair of blood-spattered jeans and tennis shoes worn by Moran during the murder. Moran's wife's DNA was found on both items.

Finally, three witnesses testified that they heard Moran say that he killed his wife. The jury returned a guilty verdict of second-degree murder with a firearm. The trial court sentenced Moran to life in prison.

Moran appealed his judgment and sentence. This court affirmed per curiam. *Moran v. State*, 294 So. 3d 854 (Fla. 1st DCA 2020) (unpublished table decision).

Moran then moved for postconviction relief. The trial court struck his first motion as insufficient, but granted leave for Moran to amend within sixty days. Moran filed a timely amended motion. The trial court summarily denied the motion, attaching portions of the record refuting Moran's claims. This timely appeal follows.

*Standard of Review*

To prove that his trial counsel was ineffective, Moran had to show that counsel's performance was outside the wide range of acceptable professional standards, and that such conduct prejudiced the outcome of the proceedings because without the conduct there is a reasonable probability that the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984); *Spencer v. State*, 842 So. 2d 52 (Fla. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Spencer*, 842 So. 2d at 61.

*Claim One*

Moran argues that his trial counsel was ineffective because he did not object to expert testimony linking Moran to the casing and bullet fragments found at the crime scene. Moran argued that counsel should have objected to testimony from three witnesses: (1) Chad Smith's testimony linking a spent casing to Moran's Ruger M77 Mark II rifle recovered from the Moran home; (2) Elizabeth Richey's testimony linking the bullet fragments found at the crime scene to the Ruger M77 rifle; and (3) Investigator Timothy Adkins' testimony about the trajectory of the bullet that killed the victim.

Moran, relying on *Hisler v. State*, 42 So. 692, 695 (Fla. 1906), asserts that the three witnesses based their testimony on experiments that were too dissimilar to the real attendant circumstances of the shooting that they were designed to mimic. In *Hisler*, the Florida Supreme Court explained that when determining the admissibility of evidence from an experiment, a trial court must consider similarity with attendant conditions:

> Evidence of an experiment whereby to test the truth of testimony that **a certain thing occurred** is not admissible, where the conditions attending the alleged occurrence and the experiment are not shown to be similar. The similarity of circumstances and conditions go to the admissibility of the evidence, and must be determined by the court.

*Id.* at 695 (emphasis supplied). In other words, witnesses may present testimony about experiments conducted only when the conditions of the experiment are similar enough to the actual events. *See, e.g.*, *Johnson v. State*, 442 So. 2d 193, 196 (Fla. 1983) (holding it was not error to allow an officer to testify about firing at white paper to prove that a shot was taken at close range); *Caro v. State*, 303 So. 3d 591, 595 (Fla. 5th DCA 2020) (holding that the trial court erred in admitting testimony about an officer firing a gun at a t-shirt from various distances to prove that the victim was shot from point-blank distance); *McFarland & Sons v. Basel*, 727 So. 3d 266, 269 (Fla. 5th DCA 1999) (holding admissible testimony about the results of an accident simulation).

3

But none of the witnesses identified by Moran testified about experiments to recreate the circumstances of the shooting of Moran's wife. Smith, a laboratory analyst, testified that his testing showed that the spent casing located near where the victim was shot was fired from Moran's rifle. Richey, a firearms analyst, testified that the damage to the bullet fragments recovered from the scene prevented her from determining their caliber. But she concluded that the width of the grooves on the fragments were "very similar" to bullets test fired from Moran's rifle. Ultimately, Richey could not include or exclude the fragments as coming from that rifle.

The testimony from Smith and Richey was based on comparison analysis and was admitted to show that the casing and bullet fragments came from Moran's firearm. Neither conducted experiments to recreate the events from the shooting. The type of comparison analysis presented by Smith and Richey is a common method in forensics involving firearms and ballistics. *See Amaro v. State*, 272 So. 3d 853, 855 (Fla. 5th DCA 2019) ("Forensic firearm and tool-mark identification evidence is not a new or novel methodology, and its admissibility in criminal cases is well-documented in Florida's jurisprudence."); *see also King v. State*, 89 So. 3d 209, 228 (Fla. 2012) ("Decisional law demonstrates that tool-mark identification in the context of ballistics has been used in the criminal context since at least 1929, and in Florida since at least 1937." (citations omitted)). Thus, *Hisler* does not apply to their testimony.

Moran also asserted that *Hisler* prevented the admission of Adkins' testimony about the bullet's trajectory. As with Smith and Richey, Adkins' testimony did not involve any sort of experiment to show that a certain event occurred, so *Hisler* does not apply here. Rather, Adkins explained that he used trajectory rods to locate any bullet fragments in Moran's mattress, not to conduct trajectory analysis. Because counsel had no legal grounds to object to the testimony of these three witnesses, he was not ineffective. *See Hitchcock v. State*, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

4

*Claim Two*

In his second claim, Moran alleged that counsel was ineffective because he did not admit into evidence a voicemail Moran left for Mike Thompson. In the voicemail, Moran accuses Mike Cunningham of selling drugs to Moran's wife. The State objected to the admission of the voicemail because the defense was not offering the voicemail to show Moran's state of mind. The trial court never ruled on the objection.

In his postconviction motion, Moran argued that the voicemail was admissible to show his state of mind, as an excited utterance, and to bolster his defense. Moran explained that the State's theory was that he killed his wife due to her drug problems and his anger with her over her addiction. But the voicemail would have shown that Moran was angry with Cunningham, not his wife, for selling drugs to his wife and causing her addiction. The voicemail also showed Moran's belief that Cunningham had previously broken into Moran's home and knew the location of his guns, which made it more likely Cunningham broke into Moran's home and killed Moran's wife.

The trial court did not err in rejecting Moran's argument because if even if the voicemail had been admitted at trial, Moran could not show there was a reasonable probability that the outcome of his trial would have been different. *Strickland*, 466 U.S. at 684 (holding that to establish prejudice, a defendant must show that the result of trial would have been different); *Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001) (holding that if a defendant fails to satisfy one prong of *Strickland*, then it is unnecessary to address the other prong). The police found Moran's wife dead on the back porch of the marital home. Even though the police heard Moran walking around the home while yelling and talking to himself, Moran claimed that he could not exit the house because he could not walk. Two officers dragged Moran out of the home, but Moran walked to the ambulance for medical treatment. A video of Moran's erratic behavior was played for the jury.

The State admitted physical evidence to show that Moran was responsible for killing his wife. The evidence showed a blood trail throughout the home and suggested that someone tried to clean up

and hide the trail. A spent casing and bullet fragments were also recovered during the search. An expert then linked the casing to one of Moran's rifles.

Moran also made several inculpatory statements. While in the ambulance, Moran said, "I can't believe I killed my wife," and "they killed my wife." Investigator Adkins heard Moran say, "I killed her," while Moran was in jail. Deputy Joe Walker also heard Moran say, "I did it, I did it, I did it, I pulled the trigger, but then she got up afterwards." Based on this evidence, there is no reasonable probability that the admission of the voicemail would have changed the outcome of the trial. *See Reed v. State*, 326 So. 3d 767, 773 (Fla. 1st DCA 2021) ("[T]he evidence introduced at trial was so overwhelming that Appellant cannot demonstrate that he was prejudiced by any alleged failure on the part of trial counsel.").

*Claim Three*

Moran's third argument was that his trial counsel did not properly impeach Jennifer Cunningham and Hailey Hammock. Moran alleged that Cunningham stated in her deposition that Moran's wife had essentially no friends yet testified at trial that Moran's wife had a friend named Laurie. But Moran failed to show that his counsel was ineffective for not impeaching Cunningham as to this testimony. The two statements—that Moran's wife had "essentially" no friends and then that she had one friend—are not inherently contradictory, so defense counsel had no grounds to impeach Cunningham. *See Hitchcock*, 991 So. 2d at 361 ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

As to Hammock, Moran alleged that his counsel should have impeached Hammock with her prior conviction for possession of methamphetamine. Moran contends that evidence of Hammock's drug use would have explained why the victim had methamphetamine in her system at the time of her death. But the presence of the drug in the victim's system was not an issue in the trial. The medical examiner testified that the amount of methamphetamine was not lethal. So Moran's counsel was not deficient for not pursuing the proposed impeachment of Hammock because evidence of Hammock's drug use was not relevant. *See*

6

§ 90.403, Fla. Stat. ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."); *Dickerson v. State*, 285 So. 3d 353, 357 (Fla. 1st DCA 2019) ("Deficient performance is performance which is objectively unreasonable under prevailing professional norms.").

*Claim Four*

In his fourth claim, Moran argued that counsel was ineffective for failing to investigate exculpatory witnesses present during Moran's alleged confessions. Moran argued that counsel should have called Jack Howell, the mental health coordinator at Bay County Jail, to contradict the assertion that Moran confessed in front of Deputy Joe Walker. Howell testified during his deposition that when Moran allegedly confessed to Walker, Moran was not talking to anyone. Howell could also have testified about seeing Moran with a head injury and bruising. Moran also asserted that defense counsel failed to investigate the jail officials present when Moran allegedly confessed to Investigator Adkins.

Moran's counsel was not deficient as to this claim, either. The record refutes Moran's allegations. Deputy Walker testified that when Moran confessed, there were other people in the jail cells. Walker did not check to see if anyone else heard Moran's confession. Moran never alleged that Howell was present when Walker said that he heard Moran confess. And even if Howell would have testified that Moran did not speak to anyone when he first arrived and that Moran had a head injury, this testimony would not have refuted Walker's testimony that Moran confessed to the murder.

Moran's claim that counsel should have investigated the jail officials present when he allegedly confessed to Investigator Adkins is also facially insufficient. To prevail on this claim it "must contain the identity of the witness, a description of the witness's testimony, an explanation of how the omission of this testimony prejudiced the outcome of the appellant's case and that the witness was available." *Jackson v. State*, 965 So. 2d 302, 303 (Fla. 1st DCA 2007). Moran never provided the name of the witnesses, nor did he

7

describe the witnesses' alleged testimony. Because Moran already had a chance to amend his motion, the trial court did not err in denying this claim as facially insufficient. *See Nelson v. State*, 977 So. 2d 710, 711 (Fla. 1st DCA 2008) ("Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities.").

## Claim Five

In his fifth claim, Moran argued that his counsel was ineffective for failing to have Moran's fingernail clippings (collected after the shooting) tested for gunshot residue. Even so, Moran admitted that gunshot residue testing could not definitively show whether the test subject has fired a gun. And an officer testified at trial that FDLE had not required gunshot residue testing for at least eight years due to its unreliability.

What's more, the evidence at trial showed that Moran had time to shower and change clothes before the police arrived at the crime scene. There were bloody towels and rags throughout the home. Moran's shoes and jeans were stained with his wife's blood. And the police located a mixture of Moran's and his wife's blood in the shower. So a lack of gunshot residue under Moran's fingernails could easily be explained away by Moran's actions after the shooting. On these facts, Moran failed to show that his counsel was deficient for failing to seek gunshot residue testing on Moran's fingernails or that there was a reasonable probability that the outcome of the trial would have been different if the clippings had been sent for further testing. *Dickerson*, 285 So. 3d at 357.

## Claim Six

Last, Moran argues that the preceding five errors resulted in cumulative error. Because all of Moran's claims lack merit, the trial court properly denied this claim. *Schoenwetter v. State*, 46 So. 3d 535, 562 (Fla. 2010) (holding that it is proper to deny a claim of cumulative error when each individual claim of error is meritless).

*Conclusion*

Because all Moran's claims were refuted by the record or were facially insufficient, we AFFIRM the trial court's order denying Moran's postconviction motion.

B.L. THOMAS and ROBERTS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Crystal McBee Frusciante of The Frusciante Law Firm, Sunrise, for Appellant.

Ashley Moody, Attorney General, and Heather F. Ross, Assistant Attorney General, Tallahassee, for Appellee.