[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2011
JOHN LEY
CLERK

_____

No. 10-13840

_____

D.C. Docket No. 1:10-cv-20399-UU

JUAN CARLOS CHAVEZ,

Petitioner - Appellant,

versus

SECRETARY FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 25, 2011)

Before CARNES, WILSON and MARTIN, Circuit Judges.

CARNES, Circuit Judge:

Just as time waits for no one, there are limits on how long our legal system

will wait for anyone to bring a claim.  Those limits are expressed in and enforced

by statutes of limitations and doctrines of repose. The statute of limitations involved in this case is the one that requires a prisoner seeking federal habeas corpus relief to file the petition within one year after the conclusion of his direct appeal. See 28 U.S.C. § 2244(d). The statute itself provides that the time spent litigating a properly filed state collateral attack does not count against the petitioner, see id. § 2244(d)(2), and the Supreme Court has decided that in extraordinary circumstances, and when the petitioner has shown reasonable diligence, equitable tolling may apply to prevent other time from counting. This appeal is about that doctrine and whether it applies under the circumstances of this case.

## I.

Juan Carlos Chavez was convicted and sentenced to death for the kidnapping, sadistic sexual battery, and murder of a nine-year-old child. See Chavez v. State, 832 So. 2d 730, 736–41 (Fla. 2002). His convictions and sentence were affirmed on direct appeal, see id., and the Supreme Court denied certiorari in June of 2003. Chavez filed a motion for post-conviction relief in state court in May of 2005, and the Florida Supreme Court affirmed the trial court's denial of that motion in June of 2009. See Chavez v. State, 12 So. 3d 199 (Fla. 2009). In February 2010 Chavez filed in federal court a 28 U.S.C. § 2254 petition

2

for writ of habeas corpus. But he had a serious problem: his petition was not filed within the one-year period specified in 28 U.S.C. § 2244(d)(1), the statute of limitations provision of the Anti-Terrorism and Effective Death Penalty Act.

Recognizing that problem, in his belated federal habeas petition Chavez alleged facts that he contended entitled him to enough equitable tolling to bring its filing within the statute of limitations. His petition requested an evidentiary hearing so that he could prove those factual allegations. The district court denied the request for an evidentiary hearing and dismissed the petition on statute of limitations grounds, reasoning that even if all of the allegations in the petition were true, Chavez still would not be entitled to enough equitable tolling to bring the filing within the one-year limitations period. This is his appeal of that dismissal.

## II.

Chavez filed his 86-page petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 9, 2010. He spent much of the first twenty pages of that petition spelling out his position that he was entitled to equitable tolling of the statute of limitations. He alleged various facts about his post-conviction counsel and what had occurred between the affirmance of his convictions and sentence on direct appeal in 2002 and the issuance of the mandate for the Florida Supreme

Court's decision in 2009 affirming the trial court's denial of his motion for post-conviction relief. After alleging those facts and contending that they justified equitable tolling, Chavez requested an evidentiary hearing in order "to be given the opportunity to establish his entitlement" to the tolling he sought.

The district court issued an order requiring the State of Florida to file a memorandum of fact and law showing cause why the petition should not be granted. The court directed that the memorandum:

> be accompanied by a comprehensive appendix, which shall include copies of: 1) all relevant state trial and appellate court pleadings; 2) transcripts of the petitioner's trial or plea colloquy; 3) briefs filed on direct appeal; 4) motions seeking relief pursuant to Fla. R. Crim. P. 3.850, including transcripts of collateral evidentiary hearings, and briefs from any ensuing appeal; 5) state habeas corpus applications and briefs from any ensuing appeal; [and] 6) records of any other state collateral proceedings that may be relevant to the federal issues . . . .

In compliance, the State filed a 130-page response. Before addressing the merits of Chavez's § 2254 petition, the State argued that the petition had not been timely filed and that Chavez was not entitled to equitable tolling. With respect to Chavez's request for an evidentiary hearing on the issue of equitable tolling, the State argued that because the allegations of his petition were "insufficient as a matter of law to warrant equitable tolling," he was not entitled to a hearing on the issue. The State also submitted to the district court a voluminous record,

4

consisting of nine boxes that contained well over 25,000 pages of documents.

The district court entered an order dismissing Chavez's habeas petition on statute of limitations grounds, agreeing with the State that the petition was not timely filed and rejecting Chavez's argument that he had pleaded enough facts to state a viable claim to equitable tolling. The order explained that Chavez was not entitled to an evidentiary hearing on the issue because even if everything he alleged in his petition were true, those allegations would not entitle him to equitable tolling of enough time to make his petition timely. The district court did, however, grant a certificate of appealability so that this Court could consider "whether [Chavez] demonstrated that he is entitled to equitable tolling of the one-year limitations period imposed by 28 U.S.C. § 2244(d)(1)."

## III.

We review the district court's denial of equitable tolling de novo, Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002), and we review its denial of an evidentiary hearing only for an abuse of discretion, id. at 1292.  In the present case those two standards of review blend together into this:  if we agree with the district court that the facts alleged in the habeas petition are not enough to make Chavez's petition timely under 28 U.S.C. § 2244(d), then it was not an abuse of discretion for the district court to deny him an evidentiary hearing, and the court

did not err by dismissing his petition.

## IV.

In a habeas corpus proceeding "[t]he burden is on the petitioner . . . to establish the need for an evidentiary hearing." Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc); see also Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("We emphasize that the burden is on the petitioner in a habeas corpus proceeding to allege sufficient facts to support the grant of an evidentiary hearing and that this court will not blindly accept speculative and inconcrete claims as the basis upon which a hearing will be ordered." (quotation marks omitted)).

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 1940 (2007). That means that if a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing. Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, Allen is not entitled to an evidentiary hearing."); Porter v. Wainwright, 805

6

F.2d 930, 933 (11th Cir. 1986) ("While the district court is required to conduct an evidentiary hearing in certain circumstances, such a hearing is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief.").[1]

The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing. San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics.'" (quoting Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006)); see also Boyd v. Allen, 592 F.3d 1274, 1306–07 (11th Cir. 2010) ("On this scant record, we cannot say that Boyd's allegations amount to anything more than the merely conclusory, nor that the district court has abused its considerable discretion in failing to hold a hearing on his claim." (citation omitted)).

---

[1]AEDPA does contain additional restrictions on a federal court granting an evidentiary hearing in a state prisoner's habeas proceeding. See 28 U.S.C. § 2254(e)(2); Cullen v. Pinholster, __U.S.___, 131 S.Ct. 1388, 1398 (2011); see also, Schriro, 550 U.S. at 474, 127 S.Ct. at 1940 ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."). Those additional restrictions do not, however, apply to the § 2244(d) statute of limitations tolling issues before us, because whether the statute is equitably tolled is a purely federal issue, which did not arise until Chavez's federal habeas petition was filed.

Of course, all of these principles of law would mean nothing if district courts were required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.  Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts.  With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him.  Cf. Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1481 n.12  (11th Cir. 1997) (noting in a civil case that, absent plain error, "it is not our place as an appellate court to second guess the litigants before us and grant them relief . . . based on facts they did not relate."); Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1373 (11th Cir. 1997) ("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact.").  The Seventh Circuit memorably said that appellate judges "are not like pigs, hunting for truffles buried in briefs."  United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).  Likewise, district court judges are not required to ferret out delectable facts buried in a massive record, like the one in this case, which was more than 25,000 pages of documents and transcripts.

## V.

The district court had nothing before it relevant to the equitable tolling

issue, except the dates of the principal procedural history events and the

allegations in the habeas petition about why it had not been filed sooner. In its

order denying an evidentiary hearing, the district court explained:

> Petitioner's allegations regarding the conduct of post-conviction counsel
> and the actions he took in response thereto are largely unsupported.
> Petitioner offered no exhibits in conjunction with either his Petition or
> his Reply, and the record, provided by Respondent, understandably does
> not include evidence of the communications that transpired between
> Chavez and his counsel. Additionally, Petitioner has not supplied the
> Court with counsel's motions to withdraw or the state court's orders
> disposing of those motions. Petitioner has requested an evidentiary
> hearing to prove the facts alleged; however, because Petitioner's
> allegations, even if true, do not warrant equitable tolling, no evidentiary
> hearing and no supplementation of the record are required.

Doc. 22 at 6 n.4.[2]  Thus, the equitable tolling issue rises or falls with the

---

[2]Before oral argument, we asked the parties to respond to those statements from the
district court's order. The parties filed a joint response to our memoranda, providing us with 36
different supplemental documents. See Joint Response to Court Memoranda Directing Parties to
Supplement the Record. Following oral argument, we asked the parties to clarify whether some
of those supplemental documents that related to Chavez's three sets of post-conviction attorneys
had been or had not been before the district court when it issued its decision in this case. In their
responses, the parties agreed that the supplemental documents we asked about, with one
irrelevant exception, had not been in the record before the district court or otherwise provided to
that court. See Petitioner-Appellant's Response to May 20, 2011, Memorandum to All Counsel;
Reply to Petitioner's Response to Court Directive of May 20, 2011. The supplemental
documents the parties provided to us that were related to Chavez's post-conviction counsel were
not in the vast record of well over 25,000 pages of documents and transcripts that were put
before the district court. See id.

As a result, we will not consider those documents in determining whether the district
court abused its discretion in denying an evidentiary hearing based on the record materials that
were before it. Sammons v. Taylor, 967 F.2d 1533, 1544 (11th Cir. 1992) ("[A]s a general rule,
an appellate court will not consider arguments or evidence not presented to the district court.");
Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1258 n.12 (11th Cir. 2007) ("Because this
evidence is not part of the record below, we do not consider it here."); Lee Cnty. Branch of
NAACP v. City of Opelika, 748 F.2d 1473, 1481 (11th Cir. 1984) ("[A]bsent extraordinary

allegations of the petition read against the procedural history of the case.

## A.

The habeas petition recounts the primary events in the procedural history, which frame the issue before us. Those events are these: The Florida Supreme Court affirmed Chavez's conviction and death sentence on November 21, 2002, Chavez v. State, 832 So. 2d 730 (2002), and the United States Supreme Court denied his petition for writ of certiorari on June 23, 2003, Chavez v. Florida, 539 U.S. 947, 123 S.Ct. 2617 (2003) (mem.). Chavez filed a motion for state post-conviction relief on May 5, 2005, and an amended motion on October 4, 2006. The trial court denied his motion on March 8, 2007. Chavez then appealed the denial of post-conviction relief to the Florida Supreme Court, which affirmed the trial court's decision on June 25, 2009. Chavez v. State, 12 So. 3d 199 (Fla. 2009). That court issued the mandate in Chavez's case on July 21, 2009. He filed his 28 U.S.C. § 2254 petition in federal district court on February 9, 2010.

## B.

The statute of limitations period began running when the United States

---

circumstances, federal appellate courts will not consider evidence that was not part of the trial record."); see also Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1352 (11th Cir. 2009) ("Because the issue or argument was not properly presented to the district court, we will not decide it.").

Supreme Court denied certiorari in the direct appeal on June 23, 2003. See 28

U.S.C. § 2244(d)(1)(A). The duration of statutory tolling by virtue of §

2244(d)(2) was from May 5, 2005, when Chavez filed his motion for post-

conviction relief in the state trial court, through July 21, 2009, when the Florida

Supreme Court issued its mandate affirming the denial of that motion.[3] There was

no more statutory tolling after that point.[4] See id. Chavez did not file his federal

habeas petition until February 9, 2010.

As our recounting shows, the limitations period ran without statutory tolling

---

[3]This statement about statutory tolling is dependent on the assumption we are going to make that the one-year AEDPA statute of limitations had not already run out by May 5, 2005, when Chavez filed his motion for post-conviction relief in state court. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the [federal] limitations period cannot toll that period because there is no period remaining to be tolled.").

[4]After the Florida Supreme Court issued its opinion affirming the denial of post-conviction relief, Chavez did file a petition for writ of certiorari with the United States Supreme Court . That petition was denied on November 2, 2009, Chavez v. Florida, 130 S.Ct. 501 (2009) (mem.), but the filing of the certiorari petition and the date it was denied are irrelevant for calculating the statutory tolling of AEDPA's statute of limitations. As the Supreme Court has held concerning petitions for certiorari filed at the end of state collateral review:

> After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open. And an application for state postconviction review no longer exists. All that remains is a separate certiorari petition pending before a federal court. The application for state postconviction review is therefore not "pending" after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.

Lawrence v. Florida, 549 U.S. 327, 332, 127 S.Ct. 1079, 1083 (2007).

11

for 682 days between the denial of certiorari on direct appeal on June 23, 2003, and the filing of the motion for post-conviction relief on May 5, 2005. And it ran without statutory tolling for another 203 days between the issuance of the Florida Supreme Court's mandate in the state collateral proceeding on July 21, 2009, and the filing of the federal habeas petition on February 9, 2010. In sum, the total time the limitations period ran without statutory tolling is $682 + 203 = 885$ days, which is 520 days beyond the one year allotted in § 2244(d)(1). Unless the allegations of the habeas petition, if true, establish that Chavez is entitled to 520 days of equitable tolling, the district court's ruling that the petition was time-barred is correct.

## C.

Chavez's petition sets out the following allegations about what his three sets of post-conviction attorneys did or failed to do between the appointment of the first attorney in May 2003 and the filing of the federal habeas petition by the third attorney's law partner in February 2010.[5]

The state trial court appointed John Lipinski to represent Chavez in his state post-conviction proceedings, and Lipinski filed a notice of appearance on May 23,

---

[5]Andrea Norgard was the third attorney appointed to represent Chavez in his state post-conviction proceedings. She filed the amended motion for post-conviction relief on October 4, 2006. Her law partner (and husband) Robert Norgard filed Chavez's federal habeas petition. .

2003, one month before the United States Supreme Court denied certiorari in Chavez's direct appeal. Lipinski's co-counsel, Todd Scher, visited Chavez a short time after Lipinski was appointed, and Chavez later mailed Scher a list of proposed points that he wanted raised in a post-conviction motion. Despite that communication and other "repeated inquiries" about the status of the motion, Chavez received no response from either Lipinski or Scher.

On January 26, 2004, Lipinski requested, under Florida Rule of Criminal Procedure 3.851(d)(5),[6] that the Florida Supreme Court grant him an extension until July 19, 2004, to file Chavez's state post-conviction motion. According to the allegations of the federal habeas petition, the grounds for that extension were Lipinski's health problems, which had led to his hospitalization for a heart procedure on January 21, 2004, just a few days before he filed the request for an extension of time. The extension motion itself stated that Lipinski had been suffering from "sweating, watering eyes, shortness of breath, 'tingling' in his left hand, elevated blood sugar, and trouble remaining alert, awake and focused for hours at a time." (quotation marks omitted).

---

[6]Florida Rule of Criminal Procedure 3.851 provides that "[a]ll pleadings in the postconviction proceeding shall be filed with the clerk of the trial court," Fla. R. Crim. P. 3.851(f)(1), but that "[a]n extension of time may be granted by the Supreme Court of Florida for the filing of postconviction pleadings if the prisoner's counsel makes a showing of good cause," id. 3.851(d)(5).

13

Chavez's habeas petition alleges that Lipinski still had those symptoms when he met with Chavez for the first time on July 9, 2004, more than a year after he had been appointed as post-conviction counsel. Lipinski was "out of it," according to the petition, and "appeared unable to remain alert, awake, and focused." Just a few weeks later, on July 19, 2004, Lipinski filed a motion on behalf of Chavez for post-conviction relief. But the petition alleges that there were significant problems with that motion: Chavez "did not know the origin of some of the statements . . . made in the motion," and Lipinski had turned some of Chavez's answers to his questions "backward." As a result, Chavez refused to sign the motion, because he believed that it "contained statements that were untrue," "was ineffective," and "demonstrated that Mr. Lipinski was not competent to properly handle his postconviction litigation." The habeas petition admits that because Chavez refused to sign the state post-conviction motion, it "was not under oath as required by Florida Rule of Criminal Procedure 3.850"[7] and was therefore not "a properly filed postconviction motion." Therefore, the petition concedes, it "did not toll the time for Mr. Chavez to file his federal habeas corpus petition."[8]

---

[7]Technically speaking, motions to set aside a death sentence are filed under Florida Rule of Criminal Procedure 3.851, not 3.850, but motions for relief under either of those two rules must be sworn. Compare Fla. R. Crim. P. 3.851(e)(1), with 3.850(c).

[8]We agree with that concession. In order to statutorily toll the running of the limitations period, an application for state collateral relief must be "properly filed" under state law. See 28

14

The petition also alleges that after Lipinski filed the unsworn state post-conviction motion anyway, Chavez filed in state court a pro se motion to discharge him. Chavez attached to the motion a handwritten letter to the court "in which he stated that he could not get either Mr. Lipinski or co-counsel, Mr. Scher, to respond to him for over a year despite repeated attempts on his part to ascertain the status of his case." Chavez's letter complained about the unsworn collateral attack motion that Lipinski had filed, asserting that in it Lipinski had "mixed up and confused the content of the initial interview" with Chavez and had included "a bunch of foolishness." For his part, Lipinski requested that the Florida Supreme Court grant him an enlargement of time to file a sworn post-conviction motion, which it did, giving Lipinski until September 7, 2004, to file a sworn motion in the state trial court.

But Lipinski never had a chance to do so. On August 25, 2004, the state trial court granted Chavez's pro se motion to remove Lipinski, and it appointed attorney Lee Weissenborn to replace him. The only motion for state post-conviction relief that Lipinski ever filed for Chavez was the one that Chavez

U.S.C. § 2244(d)(2); Allen v. Siebert, 552 U.S. 3, 128 S.Ct. 2 (2007); Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361 (2000); see also Hurley v. Moore, 233 F.3d 1295, 1298 (11th Cir. 2000) (holding that the defendant's motion was not properly filed where it did not comply with the written oath requirement of Fla. R. Crim. P. 3.850).

15

refused to sign, which was filed unsworn on July 19, 2004.

In addition to those allegations about Lipinski's representation, Chavez's habeas petition contains the following allegations about Weissenborn's representation. Weissenborn met with Chavez once. He sought and received from the Florida Supreme Court two extensions of time to file a motion with the trial court for post-conviction relief under Florida Rule of Criminal Procedure 3.851. Those extensions resulted in a final filing deadline of May 2, 2005. Weissenborn missed that deadline, but by only three days, filing a motion for post-conviction relief in the state trial court on May 5, 2005. (Neither party suggests that Weissenborn's missing the deadline by three days had any detrimental effect on Chavez.)

Like the state post-conviction motion that Lipinski had filed, the one Weissenborn filed also was "not under oath or signed by Mr. Chavez." Chavez's habeas petition explains, however, that "Mr. Weissenborn did subsequently have Mr. Chavez sign a hand-written oath to be attached to the motion," but it notes "that oath does not appear in the court file, nor is it file-stamped." For our purposes, though, we will assume this motion was properly filed. (In the response that the State filed to Chavez's May 5, 2005 post-conviction motion, it did not

16

assert, nor did the state trial court find, that the motion was not properly sworn.[9] )

The habeas petition also alleges that the post-conviction motion Weissenborn filed "adopted some of the arguments raised by Mr. Lipinski to which Mr. Chavez had originally objected," and that Chavez "wrote to Mr. Weissenborn complaining of the same."

On November 8, 2005, six months after he had filed the post-conviction motion in the state trial court on Chavez's behalf, Weissenborn filed a motion for leave to withdraw from the case. The trial court granted the motion on December 13, 2005, explaining that Weissenborn had asked to withdraw because he had "irreconcilable and irreparable differences" with Chavez's trial counsel, who he had hoped would be the primary witness testifying on Chavez's behalf at the evidentiary hearing in the state post-conviction proceeding. The habeas petition alleges that the court also expressed concern, based on conversations that Weissenborn's wife had with attorneys for the State, that "Weissenborn's physical health could be affected by this case."

Andrea Norgard was the third and final attorney appointed to represent Chavez in the state post-conviction proceeding. The habeas petition alleges that

---

[9] In its brief to us, the State concedes that it has an oath "purportedly signed by Chavez and dated May 2, 2005 and date stamped filed, on May 27, 2005 in the Assistant Attorney General's file." Br. of Respondents at 28 n.6.

17

Norgard "encountered considerable difficulty obtaining the record from previous counsel," that she obtained "most of the record" in June 2006, and that she filed an amended motion for state post-conviction relief on October 4, 2006.[10]

Following an evidentiary hearing on Chavez's claims, the state trial court denied his amended motion for post-conviction relief on March 8, 2007. He appealed that denial to the Florida Supreme Court. That court affirmed the denial and also denied a related petition for state habeas corpus relief on June 25, 2009, and issued its mandate on July 21, 2009.

VI.

We turn now to the decisions of this Court and the Supreme Court that deal with the circumstances in which the one-year AEDPA statute of limitations set out in 28 U.S.C. § 2244(d) may be subject to equitable tolling.

The Supreme Court dealt with the issue of equitable tolling of the AEDPA statute of limitations in <u>Lawrence v. Florida</u>, 549 U.S. 327, 127 S.Ct. 1079 (2007). That case involved § 2244(d)(2), which provides that for statute of limitations purposes the time in "which a properly filed application for state post-conviction

___

[10]Chavez's habeas petition actually alleges this post-conviction motion was filed on "October 24, 2006," but that date would appear to be a typographical error. That post-conviction motion was a part of the record that was before the district court, and it is stamped with a file date of October 4, 2006. At any rate, whether the motion was filed on October 4, 2006 or twenty days later does not affect the outcome of this case.

18

or other collateral review . . . is pending" is not counted.  See Lawrence, 549 U.S. at 331, 127 S.Ct. at 1082.  The question in the case was whether that statutory tolling provision applies to the period in which a petition for certiorari to review the denial of state collateral relief is before the United States Supreme Court.  Id. at 331–36, 127 S.Ct. at 1082–85.  The answer the Court gave was "no."  Id.

Then the Court addressed the petitioner's argument that even if he was not entitled to the statutory tolling provided by § 2244(d)(2), he was entitled to equitable tolling for the period in which he was seeking certiorari review of the state collateral court's decision.  Id. at 336–37, 127 S.Ct. at 1085–86.  The Court rejected that argument, too.  In doing so, it initially observed that "[t]o be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Id. at 336, 127 S.Ct. at 1085 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814 (2005)).

Among the reasons the petitioner in Lawrence offered to justify equitable tolling was "his counsel's mistake in miscalculating the limitations period."  Id., 127 S.Ct. at 1085.  The Court rejected that reason as a justification for equitable tolling:

If credited, this argument would essentially equitably toll limitations

> periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.

Id. at 336–37, 127 S.Ct. at 1085; cf. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 458 (1990) ("Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."); but see Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549, 2568 (2010) (Alito, J., concurring) (stating that in a case where there were extraordinary circumstances beyond the petitioner's control, "[c]ommon sense dictates that a litigant cannot be constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of the word.").

Three years later, the Supreme Court returned to the issue of equitable tolling of the § 2244(d) limitations period in Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549 (2010), which involved Florida death row inmate Albert Holland. Id. at 2554–55. Thirty-seven days after Holland's conviction and sentence had become final and the one-year AEDPA statute of limitations had begun to run,

20

Bradley Collins was appointed to be his post-conviction counsel. Id. at 2555.

Collins waited 316 days before filing a motion for post-conviction relief in state

court, which left only 12 days of unspent limitations period. Id.; see also 28

U.S.C. § 2244(d)(1) & (2). The state trial court denied relief about a year later and

a timely appeal was filed. Holland, 130 S.Ct at 2555.

During the two years that the appeal of the state trial court decision was

pending before the Florida Supreme Court, communications between Holland and

Collins completely broke down. Id. Holland wrote numerous letters to the Florida

Supreme Court and its clerk's office requesting that Collins be removed, but all of

his requests were denied. Id. at 2555–56. He wrote frequently to Collins as well,

stressing the importance of promptly filing a federal habeas petition if and when

the Florida Supreme Court affirmed the denial of his state motion for post-

conviction relief. Id. at 2556–57. All of those letters went unanswered. Id.

Collins did not even contact Holland when the Florida Supreme Court affirmed the

trial court's denial of relief and issued the mandate in his case; Holland discovered

those facts only as a result of his own research in the prison library weeks after the

mandate had issued. Id. The very next day after he made that discovery, Holland

drafted his own federal habeas petition and mailed it to the district court, but by

that point the one-year statute of limitations had already run—the deadline passed

about five weeks before Holland's pro se petition was filed. Id. at 2557.

The communications between Holland and Collins that followed the filing of the pro se petition indicated that Holland, the death row inmate, knew more about the law applying AEDPA's statute of limitations than Collins, his lawyer, did. Id. at 2557–58. About two months after he filed his pro se petition, Holland filed a pro se motion in federal district court asking that Collins be removed. Id. at 2559; Holland v. Florida, 539 F.3d 1334, 1337 (11th Cir. 2008), rev'd, 130 S.Ct. 2549 (2010). The district court ultimately granted that motion, appointed new counsel, and requested briefing "on whether the circumstances of the case justified the equitable tolling of the AEDPA limitations period for a sufficient period of time (approximately five weeks) to make Holland's petition timely." Holland, 130 S.Ct. at 2559. After considering those briefs, the district court determined that the facts did not warrant equitable tolling because Holland had not sought the court system's help in learning the date that the mandate had issued in the denial of his state habeas petition, nor had he sought help from any "'outside supporters.'" Id. As a result, the district court reasoned, Holland had not "'demonstrate[d]' the 'due diligence' necessary" for equitable tolling and his petition was therefore time-barred under § 2244(d). Id.

This Court affirmed the district court's decision, but on different grounds.

22

We concluded that Holland's case presented nothing more than "[p]ure professional negligence," which could never rise to the level of "extraordinary circumstances" that would justify equitable tolling. Holland, 539 F.3d at 1339. We explained the standard we were applying:

> [I]n our view, no allegation of lawyer negligence or of failure to meet a lawyer's standard of care—in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part—can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling. Pure professional negligence is not enough.

Id.

The Supreme Court granted certiorari and issued its decision disagreeing with our standard about when equitable tolling should apply based on a lawyer's actions or inactions. The Court first re-emphasized: "We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S.Ct. at 2562 (quoting Pace, 544 U.S. at 418, 125 S.Ct. at 1814). The Court also recognized that in previous cases it had held that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Id. at 2564 (citations omitted)

23

(quoting Irwin, 498 U.S. at 96, 111 S.Ct. at 458, and Lawrence, 549 U.S. at 336, 127 S.Ct. at 1085). The Court reasoned, however, that the facts of Holland did not involve a "'garden variety claim' of attorney negligence," but instead "far more serious instances of attorney misconduct." Id.

The Court recounted the various failures on the part of Collins, as well as Holland's own "reasonable diligence" in pursuing his claims. Id. at 2564–65 (quotation marks omitted). And it summarized the attorney's misconduct in light of his client's repeated entreaties:

> To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

Id. at 2564 (emphasis added).

The Supreme Court noted that it was not stating its conclusion "in absolute form" and pointed out that "more proceedings may be necessary," but did state,

24

"We think that the District Court's conclusion was incorrect." Id. at 2565. "The diligence required for equitable tolling purposes is reasonable diligence," the Court explained, "not maximum feasible diligence." Id. at 2565 (quotation marks and citations omitted). As for how Holland had shown reasonable diligence, the Court recounted that he:

> not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

Id.

Concluding that the district court had "erroneously relied" on Holland's supposed lack of diligence, when he had actually been quite diligent, and that this Court had "erroneously relied on an overly rigid per se approach," the Supreme Court remanded the case for further proceedings to determine whether Holland had established that he was entitled to equitable tolling or an evidentiary hearing on that issue. Id.

Less than a year after the Holland decision, this Court decided San Martin v. McNeil, 633 F.3d 1257 (11th Cir. 2011), in which we reviewed the district court's

25

ruling that the petitioner, San Martin, had not acted under extraordinary circumstances or with reasonable diligence. Id. at 1269. San Martin had attempted to ground his claim to equitable tolling primarily on two allegations—the two-week delay in his receiving notice of the Supreme Court's order denying certiorari and the additional delay of nearly four months in appointment of post-conviction counsel.[11] Id. at 1268. We rejected his contention that those alleged facts amounted to extraordinary circumstances that had prevented him from timely filing his federal habeas petition. Id. at 1269. We pointed out:

> San Martin has not begun to explain how the two-week delay in receiving notice of the Supreme Court's denial of his certiorari petition ultimately caused the late filing of his federal habeas petition; or why he did not have ample time, even after the two-week delay, in which he could have presented a timely federal petition. . . . To the extent he is arguing that he could not have filed his state or federal post-conviction motions until he obtained a lawyer, his lawyer was appointed on February 11, 1999, which means that he still waited 235 days after having been appointed a lawyer before filing his tolling state post-conviction motion.

Id. at 1270–71 (footnote omitted).

In addition to determining that those alleged facts did not amount to the

---

[11] The Supreme Court had denied certiorari review in San Martin's direct appeal on October 5, 1998, but he alleged that he was not notified of that fact until October 19, 1998, and that post-conviction counsel was not appointed until February 11, 1999. San Martin, 633 F.3d at 1261, 1263.

"extraordinary circumstances" that <u>Holland</u> requires, <u>id.</u> at 1271, we also

determined that San Martin had "failed to make any showings of 'reasonable

diligence,'" which <u>Holland</u> also requires, <u>id.</u> at 1270; <u>see also</u> <u>Holland</u>, 130 S.Ct.

at 2562 (stating that the petitioner must show that he had "been pursuing his rights

diligently").  In sum, we explained:  "'In the absence of any showing of his own

diligence [or extraordinary circumstances], [San Martin] cannot be entitled to the

rare and extraordinary remedy of equitable tolling.'"  <u>San Martin</u>, 633 F.3d at

1271 (alterations in original) (quoting <u>Drew</u>, 297 F.3d at 1289).

With respect to San Martin's request for an evidentiary hearing, we held

that the district court had not abused its discretion in denying one, because:

> San Martin has not alleged that he proceeded diligently in attempting to
> learn of the Supreme Court's disposition of his appeal, or that he
> proceeded diligently upon learning of the order.  Nor has he made any
> showing that the two-week delay in notice was an extraordinary
> circumstance that in any way prevented or impeded the timely filing of
> his federal habeas petition.  In fact, San Martin has never submitted any
> kind of affidavit—to this Court or the district court—with any
> statements concerning the timeliness of his petition, his diligence, or the
> circumstances surrounding his state court and federal court filings, let
> alone any extraordinary circumstance that may have impeded him from
> timely filing his federal petition.

<u>Id.</u> at 1272.  In other words, San Martin was not entitled to an evidentiary hearing

because the facts he alleged, when taken as true, did not show extraordinary

circumstances preventing the timely filing of his habeas petition and did not show

27

that he had acted with reasonable diligence in attempting to get it filed.

## VII.

Now we apply the law set out in the <u>Holland</u> and <u>San Martin</u> decisions to the facts alleged in Chavez's federal habeas petition to determine if the district court abused its discretion in denying him an evidentiary hearing to prove those facts. The question is whether the alleged facts, when taken as true, show both extraordinary circumstances and reasonable diligence entitling Chavez to enough equitable tolling to prevent his petition from being time-barred under § 2244(d). If so, he gets an evidentiary hearing and the chance to prove that those factual allegations are true. If not, the district court's dismissal of his petition on statute of limitations grounds without an evidentiary hearing is due to be affirmed.

As we have explained in some detail earlier in this opinion, even after giving him full credit under § 2244(d)(2) for statutory tolling during all of the time that his motion for post-conviction relief was pending in state court, Chavez filed his federal habeas petition 520 days after the one-year limitations period imposed by § 2244(d) had run. <u>See</u> <u>supra</u> Part V. B. He needs that many days of equitable tolling.

The clearest path through this issue is one that follows the lapse of non-statutorily tolled time that occurred while each of the three post-conviction

attorneys (and any of their co-counsel) were representing Chavez: Lipinski, Weissenborn, and Norgard. The district court simplified matters by assuming, as Chavez contends and the State disputes, that the entire time Lipinski was representing Chavez should be equitably tolled (none of that time was statutorily tolled because the motion for state post-conviction relief was not filed until after Lipinski was removed from the case). That is a generous assumption, but for the sake of simplicity and because it does not alter the result, we will also indulge it. But subtracting every one of the 429 days that ran during Lipinski's representation[12] from the 520 days of lateness still leaves Chavez 91 days short of the amount of equitable tolling that he needs. He does not contend that he is entitled to any equitable tolling for the period during which Norgard was representing him. That means Chavez must get all 91 days of tolling that he needs from the period in which Weissenborn was representing him.

The habeas petition contains only four allegations about what happened during the period in which Weissenborn was serving as Chavez's counsel. The first allegation is that Weissenborn met with Chavez only once. That is not an

_____

[12]Here is how we calculate that during Lipinski's representation 429 days lapsed that were not statutorily tolled: The AEDPA clock began to run during Lipinski's representation only after the United States Supreme Court denied Chavez's petition for writ of certiorari on direct appeal on June 23, 2003. See 28 U.S.C. § 2244(d)(1)(A). Not counting June 23, 2003, itself, see Fed. R. Civ. P. 6(a), and bearing in mind that the year 2004 was a leap year, 429 days passed between June 24, 2003 and August 25, 2004, when the state trial court removed Lipinski.

29

allegation of a "serious instance[] of attorney misconduct" that the Supreme Court spoke of in Holland. See 130 S.Ct. at 2564. And there is no apparent connection between the number of times an attorney meets with his client and the speed with which the attorney files court motions and pleadings.

The habeas petition's second allegation about Weissenborn is that he sought and received two extensions of time to file a state post-conviction motion. See Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005) (requests for extensions of time to file motions for state post-conviction relief, and even extensions themselves, do not toll AEDPA's statute of limitations). But that allegation is simply another way of saying that the motion for post-conviction relief was not filed in state court soon enough to permit the federal habeas petition to be filed on time. Saying that does no more to establish serious attorney misconduct of the kind Holland requires than the simple statement that counsel did not file promptly enough. See Irwin, 498 U.S. at 96, 111 S.Ct. at 458 (equitable tolling does not extend to "a garden variety claim" of neglect); cf. Lawrence, 549 U.S. at 336–37, 127 S.Ct. at 1085 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). It goes without saying that Weissenborn did not proceed promptly enough. If he had, there would be no statute of limitations

30

problem to begin with and we would not be talking about whether there were the kind of extraordinary circumstances and serious attorney misconduct that warrants equitable tolling. In virtually every case where the issue of equitable tolling comes up one or more attorneys should have acted with more dispatch, but more than that is required.

The habeas petition's third allegation about Weissenborn is that the May 5, 2005 state post-conviction motion may not have been properly filed, despite the fact that the petition states that Chavez did "sign a hand-written oath to be attached to that motion." The allegation that the motion may not have been properly filed does not affect the statutory tolling or the outcome in this case based on the positions that the parties have taken and the assumptions that we have made. See supra at 16–17.

None of the three allegations in the habeas petition about what Weissenborn did and failed to do comes close to the serious attorney misconduct that was present in Holland. See 130 S.Ct. at 2564. Instead, they are at most allegations of garden variety negligence or neglect. Indeed, the habeas petition itself pleads and concedes that "Weissenborn did not engage in egregious behavior." There is no reason that we should not take Chavez at his word about that.

The habeas petition's fourth and final allegation about Weissenborn is that,

31

when it granted his motion to withdraw from the case, the state trial court expressed concerns about the effect the case might have on Weissenborn's health were he to continue representing Chavez. See supra at 17. There are, however, no allegations at all that Weissenborn's health had affected his ability to handle the case up to the time he withdrew or that it had prevented him from filing the motion for state post-conviction relief sooner. The allegation is only that the state trial court was concerned about how his health might be affected in the future were he to continue representing Chavez. And those health concerns are alleged to have been mentioned only on the day the court granted the motion to withdraw, December 13, 2005, which was seven months after Weissenborn had filed the May 5, 2005 motion for state post-conviction relief. Not only that, but the habeas petition also alleges that the actual reason Weissenborn moved to withdraw, and the reason he was permitted to do so, was that a conflict had developed between him and the chief witness who would be testifying for Chavez in any post-conviction proceedings.

Not only did the habeas petition fail to allege the kind of extraordinary circumstances and serious attorney misconduct by Weissenborn that is required for equitable tolling, it also failed to allege that Chavez acted with diligence in pursuing his rights during that period, which is another requirement for equitable

tolling.  See Holland, 130 S.Ct. at 2562; accord San Martin, 633 F.3d at 1267.  In fact, the petition contains no allegations that Chavez made any attempt to preserve his rights between August 25, 2004, when Weissenborn took the case, and the time that Weissenborn's motion to withdraw was granted on December 13, 2005.[13]  It contains no allegation that Chavez ever urged Weissenborn to file a motion for post-conviction relief, or to do so more quickly, or that Chavez ever attempted to contact the state court about his case during that time, or that he ever attempted to have Weissenborn removed.  Cf. Holland, 130 S.Ct. at 2565 (By contrast, "Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case.").  There is no allegation that shows Chavez was diligently pursuing his rights during the time Weissenborn represented him.  Cf. id. (By contrast, "The very day that Holland discovered that his AEDPA clock had expired due to Collins' failings,

---

[13]The habeas petition does allege that Chavez wrote Weissenborn to complain about some of the arguments that were made in the May 5, 2005 motion for post-conviction relief. The petition does not allege exactly when Chavez wrote Weissenborn, and Chavez has not argued that this allegation shows he was pursuing his claims with diligence. It appears, instead, to show that he was disagreeing with his counsel about those claims and the arguments supporting them. In any event, we have assumed that once the state post-conviction motion was filed, statutory tolling under § 2244(d)(2) kicked in.  See supra at 11.

33

Holland prepared his own habeas petition pro se and promptly filed it with the District Court.); cf. also id. at 2559 (recounting Holland's various efforts to have his attorney removed, including the pro se motion he filed with the district court).

Thus, even if we were to assume that the allegations in the habeas petition about Weissenborn's actions or the allegation about the threat to his future health somehow amounted to serious attorney misconduct or otherwise rose to the level of extraordinary circumstances that prevented the state post-conviction motion from being filed between August 25, 2004, and May 5, 2005, equitable tolling would still not be warranted because there is no allegation that Chavez acted with reasonable diligence during that time. As the Supreme Court held in the Pace decision: "Under long-established principles, petitioner's lack of diligence precludes equity's operation." Pace, 544 U.S. at 419, 125 S.Ct. at 1815.

Our conclusion is bolstered by the fact that Chavez waited for 203 days after the conclusion of his state post-conviction proceedings before deciding to seek relief in federal court. See, e.g., Pace, 544 U.S. at 419, 125 S.Ct. at 1815 (rejecting petitioner's argument for equitable tolling in part because "not only did petitioner sit on his rights for years before he filed his [state post-conviction] petition, but he also sat on them for five more months after his [state post-conviction] proceedings became final before deciding to seek relief in federal

34

court"). For all of these reasons, the facts alleged in Chavez's habeas petition, even if they were true, would not entitle him to equitable tolling for 91 of the days, or any days for that matter, during which Weissenborn was representing him.

In summary, after accounting for statutory tolling under § 2244(d)(2), Chavez's habeas petition was filed 520 days after the expiration of the one-year limitations period set out in § 2244(d). Even with the generous assumption that the entire 429 days while Lipinski was representing Chavez should be equitably tolled, the petition was still 91 days too late. Given that the facts alleged in the petition, even if true, would not warrant enough equitable tolling to make it timely, the district court did not abuse its discretion in denying Chavez's motion for an evidentiary hearing to prove those allegations. See San Martin, 633 F.3d at 1271–72 (holding that the district court did not abuse its discretion in refusing to grant an evidentiary hearing on equitable tolling where the petitioner did not allege "that he proceeded diligently," made no showing of extraordinary circumstances, and "proffered no supporting evidence of diligence or extraordinary circumstances"); Allen, 611 F.3d at 763 ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, Allen is not entitled to an evidentiary hearing."). The judgment dismissing the petition as untimely is due to be affirmed.

**AFFIRMED.**